UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KRISTIE LYNN STUDDARD, | ] |
| Plaintiff, | ] |
| vs. | ] 1:09-CV-02019-LSC |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, Social Security Administration, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.   Introduction.

Plaintiff, Kristie Lynn Studdard, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB").  Mrs. Studdard timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mrs. Studdard was thirty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school equivalency education. (Tr. at 10.) Her past work experiences include employment as a hairstylist and laborer. *Id*. Mrs. Studdard claims that she became disabled on April 15, 2006 due to a back injury. *Id*. She has not engaged in substantial gainful activity since the injury's alleged onset date. *Id*. at 16.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record.

*See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §

404.1520(a)(4)(v).  If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mrs. Studdard did not meet the nondisability requirements for a period of disability and DIB, although Mrs. Studdard remained insured through the date of the decision.  (Tr. at 18.)  The ALJ further determined that Mrs. Studdard has not engaged in substantial gainful activity since the alleged onset of her disability.  *Id.* at 16.  According to the ALJ, Mrs. Studdard's back pain secondary to disc degeneration at L5-S1 is considered "severe" based on the requirements set forth in the regulations.  *Id*.  However, he found that these impairments, either alone or in combination, do not meet or medically equal any of the listed impairments in Subpart P, Appendix 1. *Id.* at 17.  The ALJ further determined that Mrs. Studdard has the RFC to perform light work.  Additionally, the ALJ noted the following restrictions on the Plaintiff's RFC: her work must have a sit/stand option; temperature controlled environment; no unrestricted heights; no upper or lower extremity push/pull operations; only occasional bending, stooping and climbing; no driving; and no repetitive fine fingering manipulation.  *Id*.

According to the ALJ, Mrs. Studdard is unable to perform any of her past relevant work, is a "younger individual," as defined by the regulations and has a "high school equivalent" education. (Tr. at 17.) The ALJ determined that Mrs. Studdard had no transferable skills from any past relevant work. *Id.* After considering Mrs. Studdard's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Mrs. Studdard can perform. *Id.* The ALJ concluded his findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, at any time through December 31, 2007, the date last insured. *Id.*

II. Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971). The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.  Discussion.

Mrs. Studdard alleges that the ALJ's decision should be reversed and remanded for two reasons.  First, Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ's hypothetical questions to the vocational expert did not incorporate all established limitations.  (Doc. 8. at 2.)  Second, and in the alternative, Plaintiff alleges that the ALJ failed to properly consider her back pain secondary to disc degeneration at L5-S1 under the Eleventh Circuit's pain standard. *Id*. at 2-3.  The Court will consider each allegation in turn.

   A.   Vocational Expert's Hypothetical Question.

Plaintiff argues that the ALJ's "hypothetical questioning of the vocational expert [omitted] the limitation on the plaintiff's hands for gross manipulation." (Doc. 8 at 5.)  Later in Plaintiff's brief, however, she concedes the vocational expert was questioned about the number of existing jobs in the economy should Plaintiff be unable to engage in "repetitive gross handing." *Id*. at 6 (citing Tr. at 79-80).  Therefore, in essence Plaintiff argues that the ALJ erred by failing to give credence to Plaintiff's limitation

for "repetitive gross handling," and that he inappropriately failed to include the limitation in Plaintiff's RFC.

Plaintiff attempts to establish limitations on her ability to perform repetitive gross handling by introducing the treatment notes of Dr. Wael Hamo, M.D. (Doc. 8 at 6-9, Tr. at 200.)  Plaintiff's argument relies exclusively on Dr. Hamo's notation in May 2006 that Plaintiff had "hand and wrist pain and numbness consistent with bilateral carpal tunnel syndrome" and his recommendation that she "avoid repetitive and hard activity of both right and left hand and wrist area."  (Doc. 8. at 6-7, Tr. at 200.)  While Dr. Hamo made that notation in May 2006, his records, which cover two more years of treatment, contain no further mention of carpal tunnel syndrome or manual limitations.  (Tr. at 193-200.)  In fact, during a May 2008 visit, Dr. Hamo noted Plaintiff's denial of any upper extremity symptoms or numbness in her hands.  (Tr. at 196.)  Notably, no other medical records after April 15, 2006, the date of Plaintiff's alleged onset of disability, contain any mention of carpal tunnel syndrome or manual limitations.  (Tr. at 146-231.)  Rather, at least one treating doctor, neurologist Dr. Hisham Hakim, noted Plaintiff

had adequate strength and handgrip in both of her upper extremities. (Tr. at 203, 221).

While questioning the vocational expert, the ALJ directly asked how a limitation on gross handling would bear on Plaintiff's ability to perform available jobs. (Tr. at 79-80.) In response, the vocational expert stated that *if* Plaintiff had a limitation on gross handling, there would be no available jobs in the economy for her to perform. *Id.* Despite questioning the vocational expert about how a limitation on gross handing would affect Plaintiff's ability to find gainful employment, the ALJ excluded this limitation in his ultimate determination of Plaintiff's RFC. Thus, the ALJ determined adequate jobs exist in the national economy for Plaintiff to perform. *Id.* at 17.

The Commissioner can disregard responses to hypothetical questions where the record fails to support all the elements of the question. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986) (upholding the Commissioner's disregard of the testimony of the vocational expert that there was no work that the claimant could perform since the claimant failed to prove an element of the hypothetical question). A vocational expert's

response to a hypothetical question may be relied upon, provided the question "takes into account the claimant's precise condition and limitations." *Holley v. Chater*, 931 F. Supp. 840, 851 (S.D. Fla. 1996).

Although the ALJ questioned the vocational expert regarding a limitation for repetitive gross handling, the ALJ had good cause to disregard the response since Plaintiff failed to establish the limitation. As discussed above, there is only one notation of record tending to demonstrate a limitation for gross handling. However, even this solitary medical report is discredited by a later report from the same doctor noting the limitation had been corrected. Moreover, to be disabling for DIB purposes, an impairment must have lasted or be expected to last for a continuous period of at least 12 months. *See* 20 C.F.R. §§ 404.1505(a), 404.1509. Even assuming arguendo that Plaintiff was suffering from a limitation on repetitive gross handling in May 2006, she failed to show that such a limitation lasted or was expected to last 12 months from the onset.

The above substantial evidence supports the ALJ's exclusion of limitations for repetitive gross handling from both his hypothetical question to the vocational expert and from his ultimate finding as to Plaintiff's RFC.

The Court finds that the hypothetical that the ALJ posed to the vocational expert and subsequently relied on was accurate. *See Moore v. Astrue*, 256 Fed. App'x 330, 332 (11th Cir. 2007).

    B.    Eleventh Circuit Pain Standard.

Plaintiff asserts that the ALJ's evaluation of her back pain secondary to disc degeneration at L5-S1 was improper, and the medical record demonstrates that Plaintiff meets the three-part pain standard. (Doc. 8.) Specifically, Ms. Studdard alleges that "[c]onsidering the Eleventh Circuit standard for establishing disability due to pain, . . . the plaintiff's testimony of severe and unrelenting pain, . . . the testimony of the vocational expert . . . and finally . . . the medical evidence concerning the plaintiff's treatment for pain . . . [the Eleventh Circuit's pain standard] has been satisfied." *Id.* at 12-13.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either

(2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ is permitted to discredit Claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). In *Dyer*, the Eleventh Circuit held that the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of his symptoms, and the types and dosages of his medications, to conclude that the claimant's subjective complaints were

inconsistent with the medical record. *Id.* at 1212. "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

The ALJ in the instant case articulated the following reasons, considered in sequence, for discrediting Plaintiff's subjective testimony regarding her pain:

First, the ALJ explained that the clinical findings from both prior to and after December 31, 2007, the date Plaintiff's insured status expired, showed Plaintiff had a normal gait and required no assistive device for walking. (Tr. at 14.) This finding is supported by the documentary record. While examining Plaintiff in May and June of 2006, and later in May 2008, Dr. Hamo concluded Plaintiff's gait was within normal limits. *Id.* at 196-99. Similarly, in May 2008, Dr. Hakim noted that Plaintiff's "gait [was] steady." *Id.* at 202.

Second, the ALJ found that examination results showed Plaintiff to be "neurologically intact in all extremities" except for occasional "decreased

motor strength and reflexes in the left lower extremity and positive straight leg raise testing on the left side." (Tr. at 14.) This finding is supported by the examinations conducted by Dr. Hamo in June 2006 and May 2008, *id.* 196-97, as well as by the examinations of Dr. Hakim in May and July of 2008. *Id.* at 225. Although Dr. Hakim's records noted "tenderness" with positive straight leg raising, *id.* at 225, no where do his records indicate that Plaintiff's pain reached the level of being debilitating.

The third reason for discounting Plaintiff's testimony was that her medical treatment was "intermittent[] and conservative[]." (Tr. at 14.) In *Wolfe v. Chater*, 86 F.3d 1072, 1075 (11th Cir. 1996), the Eleventh Circuit found substantial evidence to discredit a claimant's pain testimony where treatment was conservative. Here, the conservative nature of Plaintiff's treatment is amply supported by the record. Doctors generally recommended medication, pain patches, injections or physical therapy, instead of surgery or a pain management specialist. (Tr. at 196, 200, 202, 225-27.) Additionally, as noted by the ALJ (Tr. at 14-15), despite recommendations that Plaintiff participate in physical therapy, she neglected to do so. Dr. Hakim's medical records from three visits with

Plaintiff during May and July of 2008 indicate his recommendation that she undergo physical therapy. *Id.* at 225-27. However, during Plaintiff's hearing in March 2009, she admitted never participating in any such therapy. *Id.* at 68. Such a failure to follow the treatment recommendations of her doctors indicates her condition was not as limiting as alleged. *See* 20 C.F.R. § 404.1529(c)(3)(v), (vi); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *see also Sias v. Sec'y of Health and Human Servs.*, 86 F.2d 475, 480 (6th Cir. 1988) (indicating that the Social Security Act does not relieve claimants of the responsibility to pursue reasonable treatment options that might improve their conditions or prevent them from worsening).

Finally, the ALJ discredited Plaintiff's subjective testimony by noting that "[n]o treating or consulting physician indicated that the claimant experienced pain or other subjective symptomatology to such a degree as to render her totally disabled and placed no significant exertional, postural, or environmental restrictions on her that would have precluded all forms of substantial gainful activity." (Tr. at 15.) While some treating physicians did recommend limits on Plaintiff's physical activity, for example, Dr. Hamo recommended "[l]imited stooping, climbing and bending," *id.* at 196, the

ALJ was correct in recognizing that no physician placed limits which would preclude all gainful activity. *Id.* at 146-231.

Based on the above, the ALJ found that "the documentary record does not confirm the degree of disabling symptoms asserted, and the claimant's alleged inability to perform all substantial gainful activities is simply not corroborated by substantial evidence on the record considered as a whole." (Tr. at 14.) In the ALJ's opinion, if Ms. Studdard complied with her assigned residual functional capacity, her pain should impose no "no greater than mild to moderate functional limitations upon her ability to perform basic work activities." *Id.* at 15. The ALJ further stated that "[a]ny contention to the contrary is not credible." *Id.*

Claimant disputes the ALJ's finding by citing various medical records from June 2006 to May 2008. (Doc. 8. at 10-12.) While some of the medical records cited by Plaintiff, when considered in isolation, provide objective support for her allegations, the record, when considered as a whole, fails to provide objective support.

It appears to this Court that the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable

reasons for rejecting her testimony. The objective medical evidence does not confirm the severity of the alleged pain, and the objectively determined medical conditions are not of such severity to reasonably expect the alleged pain. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's impairments did not cause disabling limitations, and instead shows that she could perform a limited range of light work for which there are a significant number of jobs in the national economy. (Tr. at 17.)

IV. Conclusion.

Upon review of the administrative record, and considering all of Mrs. Studdard's arguments, the Court finds that the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 5th day of October 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671